## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CLIFTON JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-08-2545 |
| | § | |
| BOISE LOCOMOTIVE, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND OPINION

In this employment discrimination suit, Clifton Jackson sued his former employer, Boise Locomotive d/b/a MotivePower, Inc. ("MotivePower), on August 13, 2008. Jackson, a 61 year-old African-American man, alleged that he was passed over for promotion, transferred, and terminated from his employment based on his race and age. Jackson also alleged that he was subjected to sexual harassment in the workplace. Jackson, who is proceeding *pro se*, asserted violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., 42 U.S.C. §§ 1983 and 1981, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 ("ADEA").

On November 20, 2008, this court entered a scheduling order that, among other things, set a March 6, 2009 deadline for motions for leave to amend, a May 15, 2009 discovery deadline, and a June 19, 2009 dispositive motions deadline. (Docket Entry No. 23). After discovery, MotivePower moved for summary judgment. (Docket Entry No. 33). MotivePower argues that the undisputed facts show that, as a matter of law, no

discrimination or harassment occurred. (*Id.*). In response to the summary judgment motion, Jackson filed a "First Amended Petition" on June 23, 2009. (Docket Entry No. 35). The proposed amended complaint asserts the same claims as the original complaint but also includes a religious discrimination claim. (*Id.*). On the same day, Jackson also filed a "Motion to Compel Defendant to Fully Comply with Production Request and Answer Plaintiff's Interrogatory Questions" under Federal Rule of Civil Procedure 37. (Docket Entry No. 36). Jackson asserts that MotivePower's objections to his discovery requests are not proper. (*Id.*). MotivePower responded to the motion to compel, (Docket Entry No. 40), and moved to strike the amended complaint. (Docket Entry No. 39). Jackson then filed a response to the summary judgment motion. (Docket Entry No. 41). In his response, he seeks a continuance under Federal Rule of Civil Procedure 56(f) to conduct more discovery. (*Id.*). This court held a hearing on the motions on July 24, 2009, at which the parties presented argument.

Based on a careful review of the pleadings, the motions and responses, the parties' submissions, the arguments, and the applicable law, with the liberal approach due *pro se* filings, this court grants MotivePower's motion to strike the amended complaint and grants the motion for summary judgment. Jackson's motion to compel and motion for a continuance under Rule 56(f) are denied. The reasons for these rulings are explained in detail below.

## I.    Background

MotivePower designs, manufactures, and services diesel-electric locomotives. It is

2

headquartered in Boise, Idaho with service facilities throughout the United States, including the two Houston, Texas facilities where Jackson worked – 800 Milby Street and 7299 Clinton Drive. MotivePower has a progressive discipline policy under which a "Performance Correction Notice [may] be issued that include[s] any of four levels—verbal correction, written correction, investigatory leave or administrative suspension with or without pay, or termination of employment—depending on the severity of the problem and the number of occurrences." (Docket Entry No. 34, Ex. C).

Jackson began working for MotivePower at its Milby Street location in November 2004. Jackson was a composite technician, with responsibility for general maintenance of the locomotive yard and for servicing locomotives. MotivePower presented evidence as to an incident on February 23, 2007, for which Jackson was disciplined. Jackson was assigned to complete a routine daily inspection on locomotive HB&T 9627. Under Federal Railway Administration ("FRA") safety rules, a blue flag signifies "that workers are on, under, or between rolling equipment." FRA Rule 218.23. A blue flag must be displayed before "going on, under, or between rolling equipment and may only be removed by the same craft or group that displayed them." FRA Rule 218.23. While the blue flag is displayed, the locomotive "may not be coupled to" and "may not be moved." *Id.* Jackson put the blue flag in place while he inspected locomotive HB&T 9627. Jackson failed to remove the flag when he was finished. Jackson's failure to remove the flag "caused a delay in the locomotive being released to service." (Docket Entry No. 34, Ex. D). Jackson received a verbal correction and a "Performance Correction Notice" was placed in his employee file. (*Id.*). At the motion

hearing, Jackson argued that there was no proof that he had failed to remove the flag, although he did not dispute that he had been assigned the task of inspecting the locomotive and had placed the blue flag to do that work.

Jackson was transferred to MotivePower's Clinton Drive facility on February 24, 2007. On May 10, 2007, he received a written correction for improperly using company time on May 2, 2007. The evidence showed that on May 2, Jackson's supervisor had assigned him to dispose of a half pallet of cans of stale water. This task, which "normally takes five minutes," requires "getting on the fork lift, picking up the pallet [,] and putting it in the dumpster." (Docket Entry No. 34, Ex. G). Jackson instead opened each aluminum can, emptied the water, crushed the can, and took the aluminum home with him. According to Jackson's coworkers, this process took him more than three hours to complete. (*Id.*, Ex. E). Jackson was written up because this was "an improper use of company time, which in turn create[d] a workflow impact problem when work he should have been performing was not being done." (*Id.*). At that time, "there was an overhaul in the shop to be worked on as well as daily inspections, locomotive fueling [,] and other general maintenance duties required to operate." (*Id.*, Ex. G). Jackson was admonished to spend company time "more effectively" and to "seek direction from a supervisor" if he was unsure about any task that he was given. (*Id.*, Ex. E). Jackson was warned that a similar action or occurrence before December 31, 2007 would result in a three-day unpaid suspension and that a fourth occurrence would result in termination of his employment. (*Id.*). In response to the written correction, Jackson disagreed with the discipline because he "was instructed to do this by [his] supervisor" and

4

if he had "refused to do as [he] was told, [he] would have been written up for insubordination." (*Id.*).

On August 16, 2007, Jackson received a third Performance Correction Notice along with a three-day unpaid suspension for failing to perform his job duties satisfactorily. (Docket Entry No. 34, Ex. F).  In response to a customer call at 8:30 p.m. on August 11, 2007, Jackson had been assigned to perform maintenance on a locomotive, including the replacement of a headlight and a steplight.  Jackson went out to the locomotive, but the customer called again at 10:00 p.m. to state that the lights were still not working.  Jackson was sent out again.  At 12:35 a.m., the customer called Jackson's supervisor to complain that the repairs had not been completed, despite two attempts by Jackson.  Jackson's supervisor fixed the lights and completed the repairs himself by 1:20 a.m.  The locomotive, which had been scheduled to leave at 10:30 p.m., was delayed because inoperable lights are a safety defect under FRA rules.  The customer complained because of the delay caused by Jackson's failure to complete the repairs on the first and second attempts.  Jackson was suspended without pay for August 16, 17, and 18.  He appealed his suspension to Lois Melander, the Human Resources Manager.  Melander investigated the August 11, 2007 incident and reviewed the relevant documents.  She had several discussions with Jackson about the incident that led to the customer complaint as well as his previous two disciplinary actions, reviewing the verbal and written corrections with him.  On September 26, 2007, Melander issued a report explaining the results of her investigation and sustaining Jackson's

suspension.  (Docket Entry No. 34, Ex. G).  Jackson was warned that another violation of company rules or policy would lead to the termination of his employment.  (*Id.*).

On November 13, 2007, Jackson was discovered sleeping on the job.  (Docket Entry No. 34, Ex. H).  On December 1, 2007, Jackson failed to fulfill his assignment to stock a fuel station with supplies.  (*Id.*).  MotivePower terminated Jackson's employment on December 6, 2007.  (Docket Entry No. 34, Ex. I, Declaration of Lois Melander, MotivePower Human Resource Manager, at ¶ 11).

Jackson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 4, 2008.  Jackson claimed discrimination based on race, age, and sex.  The charge stated as follows:

> I.  On December 6, 2007, my employment as a Mechanic was terminated.  For more than the two years preceding my discharge, I endured incidents of supervisory sexual harassment on an on-going basis and denied promotions for which I was qualified.  I was harassed with undeserved disciplinary reprimands and even suspended August 16-18, 2007, based on false accusations.  On November 16, 2007, my work schedule was changed to directly conflict with my part-time job which was known to management.
>
> II.  Albert G. Laurenzana, General Manager, in response to my work schedule appeal, stated that he had lots of jobs that I could do, but gave no explanation for refusing to promote me.  My Supervisor Joshua (LNU) said, "You've got to stop cheating on us."  Nothing was ever done about my reports of unwelcome sexual harassment and the false rumors spread about various employees and me.

(Docket Entry No. 1).  The EEOC issued Jackson a right-to-sue letter on July 11, 2008 and Jackson filed this lawsuit on August 13, 2008.

In this suit, Jackson alleges that he was passed over for promotion to the position of lead composite mechanic in favor of "Keith Harrison, Sabas [Olivares], [and] Clifford Anderson." (Docket Entry No. 15).  Harrison and Anderson are Caucasian and Olivares is Hispanic.  Jackson also alleges that he was transferred to work under individuals who were less qualified than he was.  Jackson asserts that his race (African-American) and age (60) were a factor in his failure to gain promotion and his transfer.  Jackson also alleges that he was the subject of sexual harassment by two male supervisors, Clifford Anderson and Doug Knieriem, in the form of one incident of "flashing" and three or four instances of "blowing kisses."  Jackson asserts discrimination based on the fact that his own preference is heterosexual.

MotivePower asserts in its motion that the undisputed evidence shows that it is entitled to judgment as a matter of law that its actions were not based on discrimination and that there was no harassment.

## II.    Jackson's Motion for Appointment of Counsel

At the motion hearing, Jackson reiterated his request for appointment of counsel.[1] When analyzing the merits of a Title VII plaintiff's request for appointment of counsel, the court considers:  "(1) the merits of the plaintiff's claims of discrimination; (2) the efforts taken by the plaintiff to obtain counsel; and (3) the plaintiff's financial ability to retain counsel."  *Gonzalez v. Carlin*, 907 F.2d 573, 580 (5th Cir. 1990) (citing *Caston v. Sears,*

---

[1]  This court previously denied Jackson's requests to appoint counsel on October 1, 2008, (Docket Entry No. 18), November 5, 2008, (Docket Entry No. 21), and March 11, 2009, (Docket Entry No. 30).

*Roebuck, & Co.,* 556 F.2d 1305, 1309 (5th Cir. 1977)).  No one factor is conclusive.  *Id.*  A court may also consider the plaintiff's ability to present his own case. While appointment of counsel is permitted, it is not "automatic."  *Id.* at 579.  Whether to appoint counsel rests within the "sound discretion of the trial court."  *Id.*

Jackson has alleged racial and age discrimination and sexual harassment.  On the basis of the summary judgment record, the first factor does not weigh in favor of appointing counsel.  As to the second factor, Jackson has made some attempts to retain counsel.  There is no indication of extensive effort.  As to the third factor, the plaintiff's ability to afford counsel, Jackson is proceeding *in forma pauperis* and describes his difficulties in obtaining employment.  He has satisfied this requirement.

These three factors are "simply ingredients in the total mix of relevant information which should guide the discretion of the district court."  *Caston,* 556 F.2d at 1310.  Jackson has a college degree and training as a paralegal.  From the record, it appears that he has adequate writing skills and familiarity with Title VII law; it does not appear that his *pro se* representation has compromised his ability to bring this suit.  The plaintiff's ability to present his case does not weigh in favor of appointing counsel.  *See*, *e.g.*, *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 203 (2d Cir.2003); *Castner v. Colo. Springs Cablevision*, 979 F.2d 1417, 1421 (10th Cir.1992); *Hunter v. Dep't of Air Force Agency*, 846 F.2d 1314, 1317 (11th Cir.1988).  The record does not support appointing counsel in this case. Jackson's fourth motion for appointment of counsel is denied.

Courts apply "less stringent standards to parties proceeding *pro se* than to parties represented by counsel and liberally construe the briefs of *pro se* litigants." *Sanders v. Barnhart*, 105 Fed. Appx. 535, 536 (5th Cir. 2004) (citing *Grant v. Cuellari*, 59 F.3d 523, 524 (5th Cir.1995); *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir.1993)); *see also  Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081, (2007) (per curiam) (holding that pleadings filed by a pro se litigant are "'to be liberally construed,' ... and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (quotation omitted). This court has reviewed the record and Jackson's filings with "a liberal construction that includes all reasonable inferences that can be drawn from them."  *See Watts v. Graves*, 720 F.2d 1416, 1419 (5th Cir. 1983).

### III.    MotivePower's Motion to Strike the Amended Complaint

The deadline for filings motions seeking leave to amend was March 6, 2009.  (Docket Entry No. 23).  Jackson filed his "First Amended Petition" on June 23, 2009, more than three months after the deadline.  (Docket Entry No. 35).  MotivePower has moved to strike the amended complaint as untimely and because it contains new claims.  (Docket Entry No. 39).

The proposed amended complaint does not contain any new factual allegations relevant to the claims alleged in the original complaint, but does add a new claim for religious discrimination.  Jackson alleges that MotivePower changed his work schedule, requiring him to work the night shift—10 p.m. to 6 a.m.—and that this schedule change disrupted his ability to attend his church services.  (Docket Entry No. 35, at 2).  Jackson,

however, did not include a religious discrimination claim in his EEOC charge.  A plaintiff in an employment discrimination lawsuit must administratively exhaust his claims before filing the suit.  In a case such as this, the plaintiff must file the claims with the EEOC before suing.  The scope of the suit is limited to the scope of the EEOC investigation that can reasonably be expected to grow out of the EEOC claims.  *See Randel v. U.S. Dep't of the Navy*, 157 F.3d 392, 395 (5th Cir. 1998).  Jackson filed EEOC claims for discrimination based on race, age, and sex, but did not mention religious discrimination.  Jackson mentioned a schedule change in an EEOC intake form, but he only stated that the schedule change conflicted with another part-time job he had and said nothing about attending church or participating in church services.  A religious discrimination claim cannot reasonably be expected to grow out of the EEOC charges Jackson did file.  *See*, *e.g.*, *EEOC v. Bailey Co.*, 563 F.2d 439, 446 (6th Cir. 1977) (upholding dismissal of religious discrimination claim because such a claim did not grow out of race and sex discrimination charge filed with EEOC); *Spencer v. Kraft Foods Global, Inc.*, 2008 WL 2705507, at *3 (E.D. Mich. July 10, 2008) (dismissing religious discrimination claim because it could not reasonably be expected to grow out of an investigation into race discrimination and retaliation claims); *Laramore v. City of Chicago*, 2004 WL 2033005, at *9 (N.D. Ill. Sept. 10, 2004) (religious discrimination claim not reasonably related to claim of racial discrimination in EEOC charge).  Jackson cannot file his religious discrimination claim in this lawsuit because he failed to file it with the EEOC first and the time for doing so has long expired.

Jackson's "First Amended Petition" also added language that appears to allege that he was targeted because of his support for a union. The amended petition states: "Plaintiff is alleging that because of union talk and contact with potential union representatives among the employees concerning their desire for union representation." (Docket Entry No. 35, at 3). To the extent that Jackson seeks to allege a cause of action under the National Labor Relations Act, 29 U.S.C. § 160(b), Jackson did not file a charge with the National Labor Relations Board within the applicable six-month limitations period and any such claim would be barred. The proposed amendment to add a claim for religious discrimination would be futile with respect to any of the new claims Jackson seeks to add to this case.

In addition to the obstacle presented by the fact that the proposed additional claims were not presented to the EEOC and the NLRB in a timely fashion, adding those claims now would create both delay and prejudice. When, as here, the deadline for seeking leave to amend pleadings has expired, a court considering a motion to amend must decide whether there is good cause to modify the scheduling order. FED. R. CIV. P. 16(b)(4). *See Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546-47 (5th Cir. 2003) (holding that the Rule 16(b) "good cause" standard, rather than the "freely given" standard of Rule 15(a), governs a motion to amend filed after the deadline set in the scheduling order); *S & W Enters.*, *L.L.C. v. SouthTrust Bank of Ala.*, *NA*, 315 F.3d 533, 535-36 (5th Cir. 2003) (same). "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S & W Enters.*, 315 F.3d at 535 (quoting 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE §

1522.1 (2d ed.1990)).   In determining good cause in the context of a motion for leave to amend, courts consider four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.*  The court may deny the motion if the movant "knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint." *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (quotations omitted); *Sosa v. Airprint Systems*, *Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (denying leave to amend under Rule 16(b) when facts were known to plaintiff at time of first complaint); *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340-41 (2d Cir. 2000) (same).

In this case, the discovery and dispositive motions deadlines have passed.   All discovery in the case as well as MotivePower's summary judgment motion were directed to the claims set forth in the original complaint.   Extending the deadlines would not cure the prejudice of adding entirely new claims.   Jackson has not shown good cause for the proposed late amendment.

MotivePower's motion to strike the amended complaint is granted.

## IV.    Jackson's Motion to Compel

Jackson moved to compel responses to interrogatories and production of documents. Jackson first served MotivePower with his interrogatories and production requests on March 20, 2009.  On April 8, 2009, MotivePower objected to all of Jackson's interrogatories on the basis that they asked for responses from current and former MotivePower employees, who

are not parties to this case.  MotivePower also objected to several of Jackson's document requests on the basis that it does not have responsive documents.  Jackson contacted MotivePower's counsel on April 28, 2009 to discuss the requested discovery. MotivePower's counsel explained to Jackson that a new discovery request would be untimely in light of the May 15, 2009 discovery deadline but that he would discuss the March 20 requests if Jackson clearly explained the information or documents sought.  Jackson served MotivePower with "Plaintiff's Revised Requests for Production" on May 7, 2009, eight days before the discovery deadline.  The interrogatories and requests for production were substantially the same as before.  MotivePower responded on May 28, 2009 with the same objections.  Jackson moved to compel on June 23, 2009.  He asserts that MotivePower must answer the interrogatories because they are "relevant and reasonably calculated and will lead to admissible evidence."  (Docket Entry No. 36, at 2).  Jackson asserts that MotivePower's objection that it does not have responsive documents is "not creditable."  (*Id.*).

MotivePower argues that the motion to compel is untimely.  In determining whether a motion to compel has been timely filed, most courts look to the discovery deadline.  *See Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 2009 WL 197739, at *28 (S.D. Tex. Apr. 11, 2009); *Days Inn Worldwide*, *Inc. v. Sonia Investments*, 237 F.R.D. 395, 397-98 (N.D. Tex. 2006) (citing cases).  The discovery deadline in this case was May 15, 2009. Jackson received MotivePower's objections to his interrogatories and document requests more than one month before the May 15 deadline.  He did not seek for the court's assistance in obtaining the discovery until over one month after the discovery deadline.  The motion to

13

compel is untimely.  *See Days Inn*,  237 F.R.D. at 398-99 (finding defendant's motion to compel untimely where filed two weeks after discovery deadline, even though it was filed on day of scheduling order deadline for all motions); *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 94 (1st Cir. 1996) (finding no abuse of discretion by the district court in denying "what was clearly Appellants' untimely motion to compel document production" when the "Appellants waited more than one month after the second extended discovery deadline had elapsed to properly request an order from the district court"); *Suntrust Bank v. Blue Water Fiber, L.P.*, 210 F.R.D. 196, 200-01 (E.D. Mich. 2002) (finding that a district court may deny a motion to compel discovery filed after the close of discovery and noting that numerous courts have denied discovery motions as untimely because the moving party had all the information it needed to file the discovery motion earlier).

Even if the motion to compel were considered timely, the record does not provide a basis to grant the relief Jackson seeks.  Jackson's interrogatories were not directed to MotivePower, but to current and former MotivePower employees.  Under Federal Rule of Civil Procedure 33, "courts have uniformly denied litigants' attempts to use interrogatories to obtain information from nonparties." *Ackah v. Greenville County School Dist.*, 2008 WL 972448 (D. S.C. Apr. 9, 2008) (denying plaintiff's motion to compel responses to interrogatories that were directed to current and former employees of defendant); *see also University of Texas v. Vratil*, 96 F.3d 1337, 1340 (10th Cir. 1996) ("Under Fed.R.Civ.P. 33(a), interrogatories may only be directed to a party to an action."); CHARLES A. WRIGHT ET AL, 8A FED. PRAC. & PROC. 2d § 2163 (2008) ("a deposition may be taken of any person,

14

while interrogatories may only be addressed to parties to the action"); *id.* § 2171 (interrogatories may not be directed to employees of a party or officers of a corporate party). MotivePower responded to the interrogatories by stating that it cannot speak on behalf of a nonparty. Importantly, MotivePower did provide Jackson with the responsive information it did have.

With respect to Jackson's document requests, MotivePower has fully answered these requests by stating either that it has produced all responsive documents or that there no documents responsive to the request. There is no basis to conclude that MotivePower has been evasive or has not complied with Jackson's discovery requests. Jackson has not shown that he is missing information that should have been produced. The motion to compel is denied.

## V.    MotivePower's Motion for Summary Judgment

### A.    The Legal Standards

#### 1.    Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf*, *Inc. v. Nike*, *Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' – that is, pointing out to the district court – that there is an

absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### 2.    Title VII and the ADEA

Title VII prohibits discrimination by employers "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . ."  42 U.S.C. § 2000e-2(a). Intentional discrimination can be proven by either direct or circumstantial evidence.  *Burrell v. Dr. Pepper/Seven Up Bottling Group*, *Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  Evidence is "direct" if it would prove the fact in question without inference or presumption.  *Jones v. Robinson Property Group*, *L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citations omitted).  If no direct evidence exists, the court uses the familiar burden-shifting framework created by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Under *McDonnell Douglas,* a plaintiff alleging discrimination must first make a *prima facie* showing that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) others similarly situated were treated more favorably.  *See id.*; *Strong v. Univ. Healthcare System*, *L.L.C.*, 482 F.3d 802, 805–06 (5th Cir. 2007).  If the plaintiff makes the *prima facie* showing, the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for the challenged action.  *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.  If the defendant meets this burden, the plaintiff must then create a genuine issue of material fact that: (1) the defendant's reason is not true, but is instead a pretext for discrimination; or (2) the defendant's reason, while true, is only one of the reasons for its conduct and that discrimination was a motivating factor in the defendant's decision.  *See Burrell*, 482 F.3d at 411–12 (citations omitted).  The plaintiff can meet this burden "by producing circumstantial

17

evidence sufficient to create a fact issue as to whether the employer's nondiscriminatory reasons are merely pretext for discrimination." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005).  The United States Supreme Court, in *Reeves v. Sanderson Plumbing Prods.,* stated that "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." 530 U.S. 133, 143 (2000). A plaintiff may show pretext by demonstrating that the proffered reasons for the challenged employment action are false or "unworthy of credence." *Nasti v. CIBA Speciality Chemicals Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (citations omitted).  If the plaintiff can show that the proffered explanation is merely pretextual, that showing, when coupled with the *prima facie* case, will usually be sufficient to survive summary judgment.  *Reeves*, 530 U.S. at 146-48.

In a mixed-motive case, if the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus.  *Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004).  The plaintiff has the ultimate burden of showing a genuine issue of material fact on whether the defendant discriminated on the basis of the plaintiff's membership in the protected class.  *Reeves*, 530 U.S. at 143.

Under the Age Discrimination in Employment Act, it is unlawful for an employer to "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1); *see Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 141 (2000); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 308-09

(5th Cir. 2004).  The ADEA makes it unlawful for an employee who is at least 40 years old

to be subjected to an adverse employment action because of the employee's age.  *See Rutland*

*v. Moore*, 54 F.3d 226, 228 (5th Cir. 1995) (citing 29 U.S.C. §§ 623(a), 631(a)).  "The same

evidentiary procedure for allocating burdens of production and proof applies to

discrimination claims under both [Title VII and the ADEA]."  *Brown v. Bunge Corp.*, 207

F.3d 776, 781 (5th Cir. 2000); *see also Rachid*, 376 F.3d at 309 (ADEA); *Laxton v. Gap,*

*Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (Title VII); *Sandstad v. CB Richard Ellis*, 309 F.3d

893, 896 (5th Cir. 2002) (ADEA).

> ## B.     Analysis
>
> ### 1.     The Failure to Promote Claim

Jackson alleges that he was passed over for promotion to lead composite mechanic.

because of his race (African-American) and age (60).  To make a *prima facie* showing of

discriminatory failure to promote, a plaintiff must show that: (1) he is a member of a

protected class; (2) he sought and was qualified for an available position; (3) he was not

selected for that position; and (4) the employer awarded the position to someone outside the

protected class.  *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680-81 (5th Cir. 2001); *see*

*also Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004).

Jackson is a member of a protected class. The summary judgment evidence, however,

precludes a finding that he has made a *prima facie* showing as to the other three elements.

There is no evidence that Jackson sought an available promotion, that he was denied the

position, or that a nonmember of the protected class filled the vacancy. The record shows that whenever a lead composite mechanic position was available, it was posted internally for application by MotivePower employees. (Docket Entry No. 34, Exs. K, I). Jackson testified in his deposition that he "did not fill out the application" for a promotion to lead composite mechanic. (Docket Entry No. 34, Ex. A, Deposition of Clifton Jackson at 53:17–19). The undisputed record evidence shows that Clifford Anderson, Keith Harrison, and Sabas Olivares were all promoted to lead composite mechanic before Jackson began working for MotivePower. (Docket Entry No. 34, Ex. I, Declaration of Lois Melander, MotivePower Human Resource Manager, at ¶¶ 12–14). There is no fact issue as to whether Jackson sought or was denied a promotion. MotivePower's summary judgment motion as to Jackson's failure to promote claim based on race and age discrimination is granted.

## 2.     The Discriminatory Transfer Claim

Jackson alleges that he was transferred to work under individuals who were less qualified than he was because of his race (African-American) and age (60). To establish a *prima facie* case of discriminatory transfer, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) others similarly situated were treated more favorably. *See Strong v. Univ. Healthcare System*, *L.L.C.*, 482 F.3d 802, 805–06 (5th Cir. 2007). "A transfer, even without an accompanying cut in pay or other tangible benefits, may constitute an adverse employment action . . . ." *Alvarado v. Texas Rangers*, 492 F.3d 605, 613 (5th Cir. 2007) (quoting *Serna v. City of San Antonio*, 244 F.3d 479, 483 (5th Cir. 2001)). "To be equivalent

to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse-such as being less prestigious or less interesting or providing less room for advancement." *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir.1999) (citing *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996); *Click v. Copeland*, 970 F.2d 106, 109 (5th Cir. 1992)).   The differences must be objective—"a plaintiff's subjective perception that a demotion has occurred is not enough." *Forsyth*, 91 F.3d at 774; *see also Hunt v. Rapides Healthcare Sys.*, *LLC*, 277 F.3d 757, 771 n. 8 (5th Cir. 2001) ("[T]he focus is on the objective qualities of the positions, rather than an employee's subjective preference for one position over another. That subjective preference, alone, is an insufficient basis for finding an adverse employment action.").

The undisputed facts in the record show that, as a matter of law, Jackson did not suffer the adverse employment action he alleges when he was transferred on February 24, 2007. Jackson was transferred from Milby Street to Clinton Drive, a distance of 3.8 miles.  He maintained the same title, responsibilities, and pay.  There is no evidence that the transfer required him to work under individuals who were "less qualified than he was."   "Laterally transferring an employee to a position accompanied only by minor changes in working conditions and no reduction of pay or benefits" is not an adverse employment action.  *Vation v. Gainey Transp. Services*, *Inc.*, 2000 WL 1206634, at *4 (N.D. Tex. Aug. 23, 2000) (quotation omitted).  Jackson has failed to produce "enough evidence to allow a reasonable trier of fact to conclude that, when viewed objectively, the transfer caused [him] harm. . . ."

*See Serna*, 244 F.3d at 483.  Jackson's dissatisfaction with the individuals he worked for at the Clinton Drive facility is insufficient to raise a fact issue.

Moreover, there is no evidence in the record that similarly situated employees outside the protected class were treated more favorably.  In fact, the record shows that MotivePower routinely transfers employees between Milby Street and Clinton Drive based on workload needs, including Shane Brown (Caucasian, age 27), transferred on August 29, 2007, and Mike Robuck (Caucasian, age 50), transferred on October 29, 2007.  (Docket Entry No. 34, Ex. B, Declaration of Chad Taylor, MotivePower Project Manager, at ¶ 8).  Jackson has failed to establish a *prima facie* case of discriminatory transfer.  MotivePower's motion for summary judgment on this claim is granted.

### 3.    The Sexual Harassment Claim

Jackson alleges that, while he was working at the Milby Street facility, he was the subject of same-sex harassment by two of his supervisors.  Jackson alleges that on one occasion Clifford Anderson "mooned" him "with his posterior."  (Docket Entry No. 34, Ex. A, Deposition of Clifton Jackson, at 35:13–36:5).  Jackson alleges that Doug Knieriem "blew kisses" at him on "three to four" occasions.  (*Id.*, at 38:7–13).  Jackson also alleges that there were "nasty rumors of in-appropriate [sic] behavior between [him] and Sabas [Olivares]," another MotivePower employee.  (Docket Entry No. 15).

### a.    *Quid Pro Quo* Sexual Harassment

When a plaintiff alleges sexual harassment by a supervisor, the court must first determine whether there was a "tangible employment action" that resulted from the

supervisor's sexual demands. *Russell v. Univ. of Tex. of Permian Basin*, 234 Fed.Appx. 195, 201 (5th Cir. 2007). If so, the claim is classified as a "*quid pro quo*" case. If not, the claim is classified as a "hostile environment" case. The record shows that none of the actions Jackson challenges – failure to promote, transfer, job termination – resulted from the sexual harassment he alleges. A *quid pro quo* sexual harassment claim requires that the tangible employment action suffered by the employee resulted from his acceptance or rejection of his supervisor's alleged sexual harassment. There is no allegation or evidence in the record that any of the alleged adverse employment actions resulted from Jackson's rejection of the sexual harassment he asserts. Jackson's sexual harassment claim is appropriately analyzed as alleging a hostile work environment.

### b.   Hostile Work Environment Sexual Harassment

MotivePower argues that Jackson's sexual harassment claim is barred because he did not file an EEOC charge within 300 days of the alleged harassing acts. MotivePower notes that Jackson was transferred from the Milby Street facility on February 24, 2007. The record shows that Jackson did perform work at the Milby Street facility on March 6 and March 9, 2007, but that he never worked at that location after that date. (Docket Entry No. 34, Ex. I, Declaration of Lois Melander at ¶ 5).

A Title VII plaintiff must file a charge of discrimination with the EEOC within 300 days of learning of the alleged unlawful employment action. *See Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). An EEOC charge must be filed within the

300-day time period after the discriminatory act occurred.  *Id.* at 113.  When a plaintiff asserts a hostile work environment claim that involves acts of harassment that may not be actionable considered separately but contribute to cause a hostile environment over days or even years, the "continuing violation" theory applies.  *Morgan*, 536 U.S. at 115 (citing *Harris v. Forklift Sys.*, *Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).  Under the continuing violation theory, a plaintiff does not have to show that all the offensive conduct occurred within the limitations period.   Instead, the plaintiff may show discrimination through a series of related acts if one or more of them falls within the limitations period.  *Id.*; *see also Pegram v. Honeywell*, *Inc.*, 361 F.3d 272, 279-80 (5th Cir. 2004).  This is because the claim is based on "a series of separate acts that collectively constitute one 'unlawful employment practice.'"  *Morgan*, 536 U.S. at 117.

Jackson's sexual harassment claim was not timely filed with the EEOC.  The record does not show, and Jackson does not allege, that even one of the challenged actions occurred within 300 days before Jackson filed his EEOC charge.  Jackson testified in his deposition that the one incident of "flashing" and the three or four incidents of "blowing kisses" all occurred while he worked at the Milby Street facility.  Jackson was transferred on February 24, 2007.  The last day Jackson worked at Milby Street was March 9, 2007.  Jackson filed his EEOC charge on February 4, 2008, 345 days after he was transferred and 332 days after the last day he worked at Milby Street.

Although Jackson complains that he was the subject of "nasty rumors," he points to no evidence showing when he was the subject of such rumors.  In his deposition, Jackson

24

could not identify one instance when he was the subject of a rumor involving sexual behavior.  (Docket Entry No. 34, Ex. A, Deposition of Clifton Jackson at 39-41).  Even assuming that "nasty rumors" could rise to the level of harassment, the record does not support an inference that any of the alleged harassing actions occurred within the 300-day limitations period.  Based on the undisputed facts in the record, the sexual harassment claim was not timely filed with the EEOC and is time-barred.

Even assuming that this claim is not time-barred, it fails as a matter of law.  In a hostile work environment sexual harassment case, the court must ask whether the supervisor's actions constituted "severe or pervasive" sexual harassment. *LaDay v. Catalyst Technology, Inc.*, 302 F.3d 474, 482 (5th Cir. 2002).  If the conduct was not severe or pervasive, the employer cannot be held vicariously liable for the supervisor's actions.  If the conduct was severe and pervasive, the employer is vicariously liable unless the employer can establish an affirmative defense.  *Id.*  To establish an affirmative defense under *Ellerth* and *Faragher*, the employer must show that (1) the employer exercised reasonable care to prevent and correct promptly any sexual harassment, and (2) the complaining employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer.  *Id.*

For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *McKinnis v. Crescent Guardian, Inc.*, 189 Fed.Appx. 307, at *2 (5th Cir. 2006) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).  "The challenged conduct must

be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). To determine whether an environment is hostile or abusive within Title VII, courts look at the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* (citing *Harris v. Forklift*, 510 U.S. 17, 23 (1993)). Isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment. *McKinnis*, 189 Fed.Appx. 307, at *2 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)).

The summary judgment evidence, taken in the light most favorable to Jackson, does not show comments or conduct that is so offensive or frequent as to give rise to a sexually hostile work environment claim. Jackson testified that the "flashing" occurred on one occasion and that the "blowing kisses" happened three or four times. With respect to the rumors of sexually inappropriate behavior, Jackson testified that he "believe[d] that they were probably coming from is Seboss and other employees of the company." (Docket Entry No. 34, Ex. A, Deposition of Clifton Jackson at 39:16–19). Jackson testified that he "kind of put two and two together, that they were probably talking about something that somebody else was doing; but maybe was using my name." (*Id.*, at 40:25–41:2). Jackson was unable to state that he heard specific statements about him and sexually inappropriate behavior. The record does not show that any of the challenged actions or comments were sufficiently

frequent or severe to state a claim.  "To survive summary judgment, the harassment must be 'so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the work place.'"  *Hockman v. Westward Commc'ns*, *LLC*, 407 F.3d 317, 328 (5th Cir. 2004) (citation omitted).  "The alleged conduct must be more than rude or offensive comments, teasing, or isolated incidents."  *Id.*  It is a "demanding" standard that requires proof of severe or pervasive conduct that can be characterized as "extreme."  *Faragher*, 524 U.S. at 788.

The case law on when workplace behavior gives rise to a sexually hostile work environment claim shows a far greater degree of harassment than the record discloses here, both in terms of the frequency and the nature of the offensive conduct.  *Compare Lauderdale v. Texas Dept. of Criminal Justice*, 512 F.3d 157, 163–64 (5th Cir. 2007) (finding pervasive harassment where plaintiff's supervisor telephoned her 10 to 15 times a night over a four-month period and many of the calls included sexual overtones and advances); *Thomas v. Willie G's Post Oak*, *Inc.*, 2006 WL 1117959 (S.D. Tex. April 25, 2006) (denying summary judgment where plaintiff's manager touched his buttocks twice and four or five times touched his arm muscles or rubbed his shoulders); *with Hockman*, 407 F.3d at 328 (holding that comments to plaintiff about another employee's body, slapping plaintiff on the behind with a newspaper, grabbing or brushing up against plaintiff's breasts and behind, and attempting to kiss plaintiff were not severe as a matter of law); *Jackson v. Kroger Co.*, 2009 WL 565514, at *5–6 (S.D. Tex. Mar. 5, 2009) (holding that supervisor's suggestive allusion to his penis size on one occasion and "roll[ing] up a piece of paper" and acting as if he were

going to "spank" plaintiff on another occasion were insufficiently severe or pervasive as a matter of law).

The actions Jackson challenges were isolated and infrequent. The record does not show that the conduct or comments Jackson complains of was "sufficiently severe or pervasive as to alter the conditions of [his] employment and create an abusive working environment." MotivePower's motion for summary judgment on Jackson's sexual harassment claim is granted.

### 4.   The Employment Termination Claim

Jackson alleges that MotivePower discriminated against him by terminating his employment. It is undisputed that Jackson is a member of a protected class and that his job termination was an adverse employment action. Jackson, however, has not presented or identified evidence in the summary judgment record that similarly situated individuals were not terminated or that the disciplinary violations used to justify the decision to fire him were a pretext for race and age discrimination.

In disparate treatment cases involving employee misconduct and discipline, a "plaintiff must show that the employer gave preferential treatment to another employee under nearly identical circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees." *Okoye v. Univ. of Texas Houston Health Science Center*, 245 F.3d 507, 514 (5th Cir. 2001) (internal quotations omitted); *see also Berquist v. Wash. Mut. Bank*, No. 05-20956, 2007 WL 2007333, at *7 (5th Cir. Jul.12, 2007) ("In disparate treatment cases, the plaintiff-employee must show 'nearly

identical' circumstances for the employees to be considered similarly situated."); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) ("Or put another way, the conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer.").  It is undisputed that Jackson was fired after he was caught sleeping on the job and failing to perform his duties.  It is also undisputed that these disciplinary violations occurred after Jackson had received a verbal correction, a written correction, and a three-day unpaid suspension, and that a fourth violation was grounds for firing under the company's progressive discipline policy.  The record does not show any non-African-American or under-age-40 employee who had a similar disciplinary record and who was not fired.  Jackson's claim that MotivePower discriminated against him on the basis of race and age by terminating his employment fails as a matter of law.

Even assuming that Jackson could make a *prima facie* showing of discrimination based on his termination, MotivePower has offered a legitimate nondiscriminatory reason for its decision and Jackson has not raised a fact issue material to determining pretext or discrimination.  MotivePower terminated Jackson's employment on December 6, 2007 because he was asleep on the job and because he had failed to perform his duties.  Jackson had been warned that the next violation of company policy would result in his termination.  Under MotivePower's progressive disciplinary policy, which applies to all employees, the next disciplinary step after a three-day suspension is termination.  Jackson argues that the progressive discipline policy and the discipline he received were a pretext for discrimination.

29

He asserts that the progressive discipline policy MotivePower relies on was not present in the employee handbook he received when he was hired.  At the motion hearing, Jackson noted that he worked at MotivePower for over two years without being disciplined until he received a verbal correction for the "blue flag" incident in February 2007.  Jackson argued that no discipline was warranted for the "blue flag" incident because there was no proof that he was the one who left the flag in the locomotive, although he did not dispute that he had been the one assigned to perform the inspection and had placed the flag on the locomotive as part of that work.  Jackson contends that the written correction for improper use of company time was also unwarranted because he was assigned to dispose of the cans and would have been insubordinate had he not done so.  Jackson did not address the fact that the written correction was based on how he disposed of the cans, by individually crushing each one in order to take them home, rather than by disposing of the entire pallet quickly.  Jackson also contends that the discipline based on his failure to repair a light did not make sense because any number of things could have caused the bulb to burn out after he finished the job.  He did not address the fact that the bulb was successfully repaired the same night by another employee.

The summary judgment evidence shows that MotivePower's progressive discipline policy applied to all employees, including Jackson.  Jackson received a written copy of a "Performance Correction Notice" each time he was disciplined.  The progressive nature of the discipline was explained to him and he received notice of the consequences of a

subsequent infraction.  There is no basis to conclude that the use of progressive discipline policy is a pretext for discrimination.

The record provides an ample basis to conclude that MotivePower acted reasonably and in good faith in disciplining Jackson.  Even if MotivePower was mistaken in its disciplinary determinations, such error alone would be insufficient to establish that MotivePower's proffered reason is pretextual.  *See*, *e.g.*, *Mire v. Texas Plumbing Supply Co.*, *Inc.*, 286 F. App'x 138, 143–44 (5th Cir. 2008) (holding that plaintiff's subjective belief that she was right and defendant was wrong, without more, was insufficient to rebut defendant's reasons for the disciplinary action); *Bryant v. Compass Group USA*, *Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (stating that the fact that an employer's investigation reaches the wrong conclusion does not establish an improper motivation).  "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."  *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).  Jackson has not submitted any evidence that MotivePower's decision to terminate his employment was based on anything other than his performance deficiencies and the accompanying discipline under MotivePower's progressive discipline policy.

The record does not raise a fact issue as to pretext or as to discriminatory motive. MotivePower's motion for summary judgment on Jackson's discriminatory termination claim is granted.

## VI.   Jackson's Motion for a Continuance to Conduct Discovery

Jackson moved under Rule 56(f) for a continuance to take additional discovery. (Docket Entry No. 41). Jackson asks for a 60-day continuance to conduct discovery because "[t]he discovery process has not gone as anticipated." (Docket Entry No. 36, at 4). He asserts that discovery is incomplete because he "need[s] to do oral deposition to gain access to information that defendant is withholding." (Docket Entry No. 41, at 2). Jackson contends that he should not be "railroaded" by a "premature" summary judgment motion. (*Id.*).

Rule 56(f) authorizes a district court to order a continuance to permit additional discovery if the nonmovant shows that she "cannot for reasons stated present by affidavit facts necessary to justify the party's opposition." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 162 (5th Cir. 2006) (citing *Wichita Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992)).[2] In requesting additional time for discovery under Rule 56(f), the nonmoving party must show why additional discovery is necessary and how that additional discovery will defeat the summary judgment motion by creating a genuine dispute as to a material fact. *Id.* (citing *Beattie v. Madison County School Dist.*, 254 F.3d 595, 605 (5th Cir. 2001)). The nonmoving party may not "simply rely on vague assertions that

---

[2]   When a party files a brief opposing the motion for summary judgment and informs the court of the need for additional discovery, these documents can serve "as the functional equivalent" of a Rule 56(f) motion and affidavit. *See Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992) ("Although it is preferred that non-movants present an affidavit to support a continuance of discovery, there is no stringent procedure that will bar litigants access to further discovery. In order to trigger the rule non-movants need only submit an 'equivalent statement preferably in writing' that conveys the need for additional discovery.") (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Jackson's Rule 56(f) motion is not deficient because he failed to submit an affidavit.

additional discovery will produce needed, but unspecified facts." *Id.* (citing *Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 333 n.5 (5th Cir. 2002)).

MotivePower's summary judgment is not premature, as Jackson asserts. The June 19, 2009 dispositive motion deadline was set in November 2008. The discovery period in this case lasted six months. That was sufficient time for Jackson to conduct discovery and obtain evidence to oppose the summary judgment motion. Jackson fails to identify evidence that the depositions he seeks to take might produce to support his claims. He has not shown how additional discovery will produce evidence that will create a fact issue as to whether MotivePower discriminated against him on the basis of race, age, or sex. The Rule 56(f) requirements are not met and the motion for continuance is denied.

## VII.    Conclusion

MotivePower's motion to strike Jackson's amended complaint is granted. Jackson's motion to compel and motion for a continuance under Rule 56(f) are denied. MotivePower's motion for summary judgment is granted. Final judgment is entered by separate order.

SIGNED on July 28, 2009, at Houston, Texas.

Lee H. Rosenthal
United States District Judge